IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON EMBREY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23 CV 15232 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ST. CHARLES TRADING, INC. and | ) | |
| CAROL LYNN MCNALLY, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiff Jason Embrey brings his four-count complaint against defendants St. Charles Trading, Inc. and Carol Lynn McNally ("McNally") (collectively, "defendants"), pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1.  Count I alleges that defendants violated the IWPCA, 820 ILCS 115/2, by refusing to pay plaintiff compensation in the form of an "earned bonus"; Count II alleges that defendants violated the IWPCA, 820 ILCS 115/2, by refusing to pay plaintiff final compensation in the form of "earned commissions"; Count III alleges that defendants violated the IWPCA, 820 ILCS 115/5, by refusing to pay plaintiff unused vacation pay; and Count IV alleges that defendants violated the IWPCA, 820 ILCS 115/14, by retaliating against plaintiff for complaining and/or requesting to be paid his "full bonus."  On December 29, 2023, defendants moved for an order directing plaintiff to pay their costs and attorneys' fees incurred in their defense against "the identical state court action" that plaintiff previously filed in the Sixteenth Judicial Circuit, Kane County, Illinois, and staying the instant lawsuit until plaintiff has complied, pursuant to Federal Rule of Civil Procedure 41(d) (Doc. 9).  For the reasons discussed below, the court grants defendants' motion.

1

## **BACKGROUND**

On April 12, 2021, plaintiff filed his original complaint against defendants (and additional defendants whom plaintiff omitted in the instant case) in Kane County, alleging unpaid commissions, unpaid vacation pay, unpaid reimbursement expenses, unpaid Sales Incentive Performance ("SIP") bonus, and retaliatory discharge under the IWPCA, as well as breach of contract under Illinois common law. Plaintiff also issued a jury demand. After defendants moved to dismiss the complaint and strike the jury demand, plaintiff requested leave to file an amended complaint, which the court granted. Plaintiff then filed his amended complaint, which did not include claims for unpaid reimbursement expenses under the IWPCA and breach of contract, or a jury demand on the IWPCA claims. Defendants moved to dismiss plaintiff's amended complaint, and in the alternative, to strike certain portions of the amended complaint and an exhibit. The state court denied defendants' motion to dismiss,[1] although it granted defendant's motion to strike in part.[2]

In state court, the parties engaged in motion practice, written discovery, and a pretrial settlement conference. In February 2022, after defendants' objections, plaintiffs moved to compel defendants to disclose fact witnesses, and to produce electronically stored information ("ESI"). The state court ordered defendants to disclose witnesses and to produce ESI. Around the same time, according to defendants, "[s]everal discovery motions were necessitated by [plaintiff's] disregard for the state court discovery rules, including, without limitation, [plaintiff] issuing an excessive amount of discovery requests." Defendants argue that plaintiff's excessive discovery requests led the state court to order limitations on the amount of discovery that

---

[1] Sua sponte, the court dismissed plaintiff's retaliatory discharge claim under the IWPCA, and denied plaintiff's motion to reconsider that ruling. However, after the Second District Appellate Court reversed another ruling based on an "identical" fact pattern, the court reinstated plaintiff's retaliatory discharge claim.

[2] According to defendants, plaintiff attached a portion of this stricken exhibit to the complaint filed with this court.

plaintiff could issue, including an order striking plaintiff's request to admit facts and limiting the number of requests to admit that plaintiff could re-serve upon defendants on November 1, 2021. On March 16, 2022, the state court ruled that plaintiff violated the Illinois discovery rules when it issued over 30 interrogatories to each defendant, and granted defendants leave to file a motion for sanctions.[3] Defendants moved for sanctions on April 12, 2022, and on December 22, 2022, the state court entered an order finding that sanctions were appropriate, but reserving "ruling on the amount of sanctions to be imposed to a future date."[4]

The parties also litigated issues with plaintiff's request for emotional distress damages. When defendants requested the production of documents that supported plaintiff's claim for damages, plaintiff "failed and refused to produce any documents to support his claim for emotional distress damages." Plaintiff explained that he was seeking only "garden variety" emotional distress damages, which he argued did not open the door for defendants to obtain his medical or mental health information. Consequently, defendants filed a motion in limine seeking to preclude plaintiff to admit evidence in support of his claim for emotional distress damages. The state court determined that plaintiff would need to make his mental health records available, or the court would grant defendants' motion. Plaintiff subsequently signed a HIPAA qualified protective order on November 2, 2022, and defendants moved for leave to issue a subpoena to

---

[3] During a hearing on the parties' discovery issues, the court noted that "what I think should have happened is that [defendants' counsel] should have noticed it up to restrict his obligations." In other words, defendants could have sought a protective order against excessive discovery requests. Instead, defendants objected to certain requests to admit, which the court noted was "certainly the standard and appropriate way, but the rules also allow him to seek the Court's order prohibiting such abuses." Plaintiff moved to strike those objections based on "assertion of improper general objections, contradictory admissions and denials of certain facts, assertion of improper objections to requests seeking admission of the genuineness of a document . . . , and simultaneous objection and answer to a request."

[4] Specifically, the court stated that "What is my intention since the parties seem to be conducting themselves better and working to resolve discovery issues collaboratively, I am going to reserve the question of sanctions. I find that they would have been—I find that they were appropriate or are appropriate. But in balancing the equities today, I don't believe I should impose them so long as the parties can continue to work together on this."

plaintiff's mental health care provider, which the court granted on January 3, 2023.

On January 6, 2023, within 15 days after the court determined that sanctions were appropriate and three days after the court granted defendants leave to issue a subpoena, plaintiff moved to voluntarily dismiss the case against all defendants. The court held a hearing on plaintiff's motion on January 11, 2023, during which the court determined that it did not have the authority to rule on defendant's motion for sanctions before ruling on plaintiff's motion to voluntarily dismiss the case. While plaintiff sought specific language in the court's order to nonsuit the matter that would preserve his right to refile his claims, the court denied this request but dismissed the case without prejudice, subject to plaintiff paying $248.31 in costs.

Plaintiff filed the instant suit in this court on October 23, 2023, alleging identical claims under the IWPCA as the state action. Defendants filed the instant motion for costs and attorneys' fees because it views plaintiff's re-filing as forum shopping. They seek attorneys' fees "in the approximate amount of $98,000.00." Defendants argue that "at a bare minimum," the court should award "the costs and attorneys' fees relative to motions against the pleadings, discovery motions relative to the Illinois rules of discovery, the amount of sanctions sought by Defendants in the sanction motion and in furtherance of the sanctions order, the motion in limine relative to the claim for emotional distress damages, and costs of $248.31 pursuant to the January 11, 2023 Court Order as a result of the nonsuit." Plaintiff has since tendered a check for $248.31.

## DISCUSSION

Rule 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the

proceedings until the plaintiff has complied." The purpose of Rule 41(d) "is to deter forum shopping and vexatious litigation." Esposito v. Piatrowski, 223 F.3d 497, 501 (7th Cir. 2000). However, attorneys' fees are generally not recoverable "costs" of litigation in federal courts unless specifically ordered by the court or provided by statute or contract. See id. at 500 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)).

Courts may order attorneys' fees "under certain factual circumstances," including the court's "inherent authority to order a party acting in bad faith to pay for the attorneys' fees of its adversary." Esposito, 421 U.S. at 501 n. 5 (citing F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc., 417 U.S. 116 (1974)). Courts can order attorneys' fees under Rule 41(d) to "compensate for the unnecessary expenses incurred by the litigation," meaning that when plaintiffs refile a case after voluntary dismissal, courts should not impose costs associated with "work that will still be useful to the defendants in the instant case." New Louisiana Holdings, LLC v. Arrowsmith, No. 11 C 5031, 2012 WL 6061710, at *11 (N.D. Ill. Dec. 4, 2012) (internal quotations omitted). A party should recover only "reasonable" attorneys' fees. See id. at *10.

According to defendants, plaintiffs conduct "is the exact type of conduct Rule 41(d) is meant to deter." They argue that "it is clear that [plaintiff] is forum shopping to escape adverse rulings, including paying sanctions to Defendants, and engaging in vexatious litigation." For example, defendants explain that plaintiff moved to Florida approximately six months after filing the state court complaint, and "continued to aggressively litigate" the case in state court until "shortly after the Sanctions Order was entered and the state court judge ruled that [plaintiff's] mental health records were discoverable." Further, defendants argue that plaintiff "propounded an absurd amount of discovery requests . . . and refused to produce [certain records] in violation

of Illinois discovery rules." Defendants assert that their work in defense of the state lawsuit "cannot be used in the instant action."

Plaintiff counters that "[t]he mere fact that [he] voluntarily dismissed the state action and elected to re-file in federal court is not evidence of any bad faith," because he dismissed the suit in compliance with the Illinois Code of Civil Procedure, § 2-1009. Section 2-1009(a) provides that "[t]he plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any party thereof as to any defendant, without prejudice, by ordered filed in the cause."[5] Moreover, plaintiff argues that his conduct was not "vexatious," which he argues is defined as acting in an "objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice," pursuing a claim "without a plausible legal or factual basis and lacking in justification," or pursuing a path "that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720 (7th Cir. 2006) (internal quotations omitted).

Further, plaintiff argues that his voluntary dismissal was not a "strategic attempt to avoid disclosure of mental health records," or sanctions.[6] He states that he disclosed his "mental health treaters," agreed to an entry of a "HIPAA order" to allow defendants to obtain his mental health

---

[5] Plaintiff also argues that re-filing is proper under § 13–217 of the Illinois Code of Civil Procedure, which "provides a plaintiff with the right to refile the cause of action within one year of the date of the dismissal order, regardless of the fact that the statute of limitations may have run during that time." Fiorito v. Bellocchio, 2013 IL App (1st) 121505, ¶ 10. However, the court agrees with defendants that whether plaintiff holds the right to refile his case in state court is not the same question as whether his case is properly filed in federal court. It is true that the effect of state court judgments in federal court depends on the state's law of res judicata and collateral estoppel. See Rekhi v. Wildwood Industries, Inc., 61 F.3d 1313, 1317 (7th Cir. 1995) (citing 28 U.S.C. § 1738). That being said, the Seventh Circuit has expressed its "amazement" that Illinois law "countenance[s] a procedure under which a party dissatisfied with the judge should be able to dismiss and start over after the judge has made a key ruling that has been appealed." Id. at 1316.
[6] He argues that Illinois Supreme Court Rule 219(e) provides that "[a] party shall not be permitted to avoid compliance with discovery deadlines, orders or applicable rules by voluntarily dismissing a lawsuit," and appears to have assumed that a similar rule would apply in federal court.

records, and "signed or was in the process of having signed" a consent form to allow defendants to obtain his records. Plaintiff also states that he did not object to the state court's suggestion that defendants could subpoena the "treaters" if their request for the records failed. Regarding sanctions, plaintiff explains that "it was assumed at the time this matter was voluntarily dismissed that any previous discovery rulings or orders from the first case would stand in this case."

The court agrees with defendants that plaintiff's arguments fall flat given his own statement that the instant action "was simply born out of the reality that [plaintiff] was not going to receive a fair adjudication of his claims in the original action." The court is unable to view this statement as anything other than an admission of forum shopping, especially when viewed alongside plaintiff's statement that "this action was the only way to ensure a fair trial as Plaintiff's claims did not permit trial by jury." When ruling on plaintiff's motion to voluntarily dismiss the case, the state court judge stated to plaintiff's counsel that:

> "You are being an [sic] abusive. And I am telling you that because we have been through this before and now litigation went on. I don't know what is going on as far as some of the discovery issues. But we went tumbling through that and it became oppressive. Now, it is abusive. This is requiring defendant to have to continue to incur costs because you can't decide what you want to do. That's improper."

The judge also explained that:

> "I believe last time we were here the Court made a finding about your conduct as it related to discovery and reserved the question of sanctions hoping that you gentlemen were going to continue to work things out. And it sounded like you might. But now, it sounds to me that you are playing games. That's what it sounds like to me, Counsel. And that I don't think is appropriate. And as I have indicated, I think your approach to litigating this case has become abusive."

The court agrees with defendants that there is evidence that plaintiff has filed this lawsuit in bad faith, "for the primary purpose of avoiding compliance with adverse rulings, and potential

further adverse rulings."  The Seventh Circuit has explained that "bad faith" includes "harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim."  Mach v. Will County Sheriff, 580 F.3d 495, 501 (7th Cir. 2009).  Further, bad faith "may occur beyond the filing of the case and may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation."  Id.  (Internal quotations omitted).  In this case, plaintiff needlessly prolonged (and consequently, increased the cost of) the state litigation, only to dismiss the case when it became clear that the state court judge would likely issue additional adverse rulings against him.

Plaintiff's last argument is that defendants fail to provide evidentiary support for their $98,000 in defense costs, or that the performed work is not useful in the instant action. According to plaintiff, "[m]uch, if not all, of the work performed in the original case is useful in this case," and asking for "all" fees is "punitive and in bad faith."  For example, plaintiff argues that defendants would "likely" have filed its motions to dismiss even if plaintiff originally filed his complaint in federal court, and plaintiff's counsel "does not think this Court" would have ruled in the same way on the motions.  Likewise, plaintiff argues that the state court discovery is useful to the instant case,[7] and defendants' motion in limine led to plaintiff's disclosure of his mental health providers.  Plaintiff argues that the work put into the settlement conference gave defendants insight into his factual and legal theory, and damages calculations.  According to plaintiff, "the only work Plaintiff's counsel cannot find some utility for in this case is the work related to Defendant's Motion for Sanctions."

However, defendants seek leave to file a fee and costs petition if the court grants their

---

[7] According to plaintiff, this includes the answers from certain defendants in the state action who are not named in this action and their motion to compel, because "the answers enabled Plaintiff to determine that the executive defendants other than Ms. McNally were not responsible for the decision to deny Plaintiff his earned and owed bonus."

motion, and they cite <u>New Louisiana Holdings, LLC v. Arrowsmith</u>, No. 11 C 5031, 2012 WL 6061710 (N.D. Ill. Dec. 4, 2012), to support their approach. According to defendants, it would have been premature to file a fee and costs petition, along with evidence in support of their petition, before the court rules on their motion. The court agrees that defendants' approach is appropriate.

However, the court is not persuaded that defendants are entitled to "all" attorneys' fees in litigating the state case. For example, it is not reasonable to order plaintiff to pay the sanctions sought by defendants in their sanctions motion (which are not technically "attorneys' fees"). The court grants defendants' motion, but it awards defendants only the fees and costs incurred in defending the Illinois state court action that are not necessary or useful to the instant action. This includes the costs and attorneys' fees relative to: defendants' fees in furtherance of the sanctions order; defendants' motion in <u>limine</u> related to plaintiff's claim for emotional distress damages under Illinois law; and defendants' discovery motions related to the Illinois rules of discovery. The court agrees with plaintiff that defendants' motions against the pleadings and failed settlement conference are useful in the instant case because they clarified the relevant issues.

## CONCLUSION

For the reasons stated above, the court grants defendants' motion (Doc. 9). Defendants are directed to submit a petition for costs and fees incurred in their defense against the state action as consistent with this opinion, on or before March 15, 2024. Plaintiff may respond to the petition on or before March 29, 2024, and defendants may reply by April 10, 2024. This action is stayed until the court determines the amount of fees and costs to be awarded pursuant to Rule 41(d), and plaintiff has paid that amount. The court will issue its ruling by CM/ECF.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

**DATE:  March 4, 2024**